## ABBOTT vs. CASE.

The uncorroborated testimony of the complainant, discredited by his own conduct, cannot avail him, in the face of the explicit denials of the defendant's answer and testimony in matters constituting the equity of the bill.

On final hearing, on pleadings and proofs.

*Mr. R. S. Kuhl* and *Mr. G. A. Allen*, for complainant.

*Mr. J. N. Voorhees* and *Mr. J. Vanatta*, for defendant.

THE CHANCELLOR.

The parties to this suit, both of the county of Hunterdon, entered into co-partnership together in the business of buying and selling horses, cattle and sheep, about the 1st of April, 1865. The partnership continued until the 1st of January following. They were each to contribute an equal share of the capital, and equally to bear the losses of the business. They purchased only four droves, which were respectively bought in June, July, August and September. They appear to have had a settlement between them on the 13th of November, 1865, when some of their accounts were as yet outstanding, and to have attempted a further settlement about the 1st of February following, at the store of George Rea, in Flemington, where they met for the purpose. No settlement was then made, and they subsequently each appointed an arbitrator, with a view to a settlement; the complainant appointing Miller Kline, and the defendant appointing A. V. Van Fleet. With these arbitrators they afterwards met at the office of Mr. Van Fleet in February, 1866, and there effected a settlement, as the defendant insists, of all matters in difference between them as partners, except as to $2000, which the complainant claimed to have contributed as capital, but which the defendant claimed that he himself had furnished, and the sum of $125 paid by Richard Emmons to the complainant, for a debt due from the former to the firm, and which the complainant insisted he had immediately paid over to the defendant, who denied that he had received it.

The bill states the partnership and its terms; that the firm continued from the 1st of April, 1865, to about the 1st of January, 1866; that by the agreement between the partners the defendant was to keep the books and be cashier, while the complainant was to confine himself to buying, selling and handling the stock; that the defendant kept the books accordingly, and received all the money of the concern, and if any was received by the complainant it was at once paid over by him to the defendant; and that the complainant contributed to the partnership of his own money $5813.73, and the firm borrowed

Abbott *v.* Case.

$4000. The bill charges that the defendant appropriated to his own use large quantities of stock belonging to the firm, for which he never accounted; that large quantities of stock for which he did account were accounted for at a price far below their true value, and that large quantities of stock bought by the firm remain wholly unaccounted for; that the defendant refuses to account for large amounts of interest received by him on debts due the firm; and that after the purchase of the last drove, and while the complainant had gone west to buy stock on his own account, the defendant, by the false representation that the complainant had absconded, being largely in debt to the firm, so that the defendant was likely to lose by him, collected from the debtors of the firm large sums of money, and also promissory notes in his own name, on which he has collected large sums for which he will not account, while at that time he was in fact largely in debt to the concern. It further charges that he represented to the complainant that a number of the horses and cattle of the firm had been sold at a profit, when no sale had been made, and in fact converted them to his own use at a price far below what could have been got for them; that he refuses to permit the complainant to examine the books of the firm; that he bought with the firm's funds of John T. Hewitt, cattle to the amount of $1105.44, to secure an individual claim he had against Hewitt, and to secure the claims of other creditors, who gave him large sums of money as compensation for securing their claims against Hewitt, for which he refuses to account; and that he refuses to account at all for his dealings with the firm and its property. The bill prays an account; that the defendant may be compelled to submit the books and accounts of the concern to the complainant's examination, and that the defendant may be decreed to pay any amount, which, on the accounting, may appear to be due to the complainant. The defendant answered the bill, denying its charges and making discovery. A very large amount of testimony has been taken in the cause on each side.

That these parties settled their partnership accounts, as far as was then practicable, on the 13th of November, 1865, is beyond dispute. There then appeared to be due to the complainant, for money contributed, $3101.25, and, at the close of that settlement, he had received $3315.68. It is proved, also, that the parties made a settlement in the office of Mr. Van Fleet, in February, 1866. This was final as to all things, except the disputed claim of $2000, for cash which the complainant alleged he had paid of his own money, on account of the second drove, and $125 which he had received from a debtor of the firm, and which he accounted for as having been forthwith paid over by him to the defendant, but the defendant denied that the money had been paid over to him. At this latter settlement, the complainant's share of the profits of the concern was agreed to be $1562.19. This sum, with the amount of his contribution, made the sum of $4663.42, from which was deducted the amount ($3315.68) of the payments and receipts with which he was chargeable up to the 13th of November, 1865, and with which he was charged in the settlement then made. Against the balance of $1347.74, increased by items omitted to $1368.24, he was charged with the money paid by Emmons to him, a note of George Kuhl, a note of George F. Wilson, and an account due from Minard W. Abbott—all assets of the firm, and all accepted by him as cash. These amounted to $1224.01; and for the rest of the amount the defendant gave him his check for $144.23. These settlements are conclusive as to all of the complainant's demand, except the items of $2000 and $125, respectively, which were understood to be disputed, and were considered to be open to investigation accordingly. As to the $125; the complainant admits that he received it, but alleges that he immediately handed it over to the defendant, in the presence of Emmons, who paid it to him. The complainant says the amount was $125, but it appears, by the testimony of Emmons, that it was only $115, he having retained, out of the amount due the firm, $10, on account of a debt due him from the complainant. Emmons

testifies that he paid the money to the complainant, in the presence of the defendant, but does not corroborate the complainant further. He says he did not see the complainant hand the money over to the defendant. The defendant denies the receipt of it. The complainant has not proved the delivery of the money to the defendant. The charge of the $125 against the former appears, therefore, to have been right. The $2000 in dispute, is a sum of money which the complainant paid to one Jesse Erwin, in Ohio, on the 4th of July, 1865, on account of sheep bought by Erwin for the firm. That this money was paid at that time and place, and on that account, cannot be doubted. The defendant insists that the money, though paid by the complainant, was the defendant's money, and was delivered by the former to the latter at Paoli, in Pennsylvania, for use in their partnership business, in paying for sheep which the complainant, who was then on his way to Ohio to purchase stock for the firm, might buy, or for sheep which had been bought for them by Erwin. The defendant, up to the time of the meeting in the office of Mr. Van Fleet for settlement, and on the first day of the meeting there, insisted that he had delivered the money to the complainant in the bank, in Flemington, on the 3d of July, 1865. On the second and last day of the meeting, he stated that he was mistaken as to the place where the money was delivered ; that as he was going home from the first meeting, it suddenly occurred to him that he was in error on that score, and that he, in fact, delivered the money to the complainant at the railroad depot in Paoli ; that he had drawn part of the money from the bank on the 3d of July, and offered to hand the $2000 to the complainant in the bank, but that the latter, expressing apprehension lest they should fail to reach the railroad station in time to take the train in which they proposed to leave Flemington that afternoon, requested the defendant to defer delivering the money to him until they should have got beyond Philadelphia ; that he retained the money accordingly, until they arrived at Paoli, which is a railroad station beyond Phila-

delphia, where they were to part company, the complainant to go on to Ohio, and the defendant to stop, to bring back to Flemington some sheep which were there belonging to the firm ; that when they arrived there they stopped at the hotel, part of which was used as a railroad station-house, and obtaining a light and the use of a room for a few moments, they went into the room together, and the defendant there gave the money to the complainant, who left ;for the west in the next train. To this the complainant replied, that he did not stop at Paoli on that occasion, except to change his ticket for a drover's pass, and went on in the same train in which he had arrived there. The defendant is corroborated in his statement as to the occurrence, by the boy who accompanied them to Paoli, who testifies that the complainant did stop there, as the defendant says ; that they did obtain the light and room, and went into the room together, and that the complainant did not leave Paoli in the train in which they came. The defendant is also corroborated by the bar-keeper, and the keeper of the hotel. There is, also, some corroboration in the fact that, on the 3d of July, he drew out of the bank in Flemington, on his own check, about $800. The testimony of Joseph S. Higgins, the complainant's brother-in-law, adduced in corroboration of the complainant's statement, appears to me to be unworthy of credit. Apart/from the criticism to which the testimony itself is liable, the transaction between him and the complainant, in which the latter, after the settlement at Mr. Van Fleet's office, gave up to Higgins, as payment for wages due him from Case and Abbott, the note of the latter for $217.14, which had been taken by the complainant in that settlement, renders his testimony suspicious, to say the least of it. No wages were due from the firm to him, and yet, without consultation with the defendant, and after the settlement, the complainant delivered up this note to Higgins as payment of wages assumed to be due to him from the firm, and in this suit claims an allowance of the payment.

The books of the concern are produced by the defendant, and the entries therein are in accordance with his claim, that he furnished the $2000 in question. The complainant himself had a book in which he had entered his contributions to the capital of the concern, and other matters relating to the transaction of its business by him. This book he had at both settlements, but he refuses to produce it in this cause. There was a statement made by him and the defendant at the first settlement, and it was taken by him at the close of the settlement, but he does not produce it. There were statements made at the last settlement. These went into the hands of his counsel. He does not produce them. Notice was given to him to produce the book and these statements. The excuses given for their non-production are, by no means, satisfactory. The defendant swears that at the first settlement all the partnership matters were settled between him and the complainant, as far as then practicable, and that it included the money contributed by the complainant to the concern. The complainant testifies that these contributions were not included. It seems altogether improbable that, in that settlement, those contributions did not enter into the calculations of the parties, and the evidence of his admissions to Dilts and Bateman is conclusive that they did. His account of his contributions, given in his testimony, is in conflict with his statement in the bill. In the bill, he says he contributed to the concern of his own money, $5813.73. In his testimony, he says he contributed to the first drove, $2500, besides $18 or $20 for expenses; to the second, over $3000; to the third, between $2000 and $3000, and perhaps more; and to the fourth, $418; over $8000 in all. His statements of the amount of his payments on the third drove are clearly unworthy of credit. He swears that the defendant claimed to have paid on that drove, to one Anser Cole, a little over $800, and he says he told him he did not, for he, the complainant, had paid it himself. He subsequently swears that he paid Cole $500, detailing the circumstances. Cole swears that he paid him only about $200, and that the defendant paid him $600 or $650. The

defendant testifies that the complainant paid Cole $150, and he paid the balance. The complainant's testimony as to his payments on the third drove is, in another respect, erroneous. He claims to have paid a Mr. Warner about $300. The evidence is, that that money was paid by the defendant. The defendant's statements as to the contributions of the complainant to the third and fourth droves, are undoubtedly correct. As to the second, the complainant claims also to have paid David Casselman $405 ; Nathan Prim, $75 at one time, and $7 at another, for which, besides the money which he alleges he paid Cole, he says he has not had credit. The defendant admits that the complainant paid Cole $150, and gives him credit for it, but he denies that the complainant paid Casselman or Prim the $405 and $75 respectively, but says he paid them himself, having given the money to the complainant for the purpose. In the settlement at Mr. Van Fleet's office, the complainant made no claim to any credits not given to him by the defendant, except the $2000 paid to Erwin. He did not claim to have contributed the money paid Cole, beyond what was credited to him by the defendant, nor the money he now claims to have paid Casselman, Warner, or Prim. He did not then claim any more than he was credited with in the books kept by the defendant; and when Mr. Van Fleet called his attention to the fact that his own book did not support his claim in these respects, he said that he must have neglected to enter the $2000 in his book. Mr. Van Fleet testifies that the charges in the complainant's book, of his contribution to the concern, and the credits in the books kept by the defendant, correspond exactly. It is not credible that the complainant would have omitted from his book charges to the amount, as he now claims, of about $4000, if he had, in fact, made such contributions. The complainant's refusal to produce, or satisfactorily to account for, the documentary evidence in his possession or under his control, of necessity weighs heavily against him in this controversy. Especially so, seeing that it is coupled with an attempt to deny the existence of his book when the evidence against him on that score is over-

whelming.    So also of his denial that the book produced by the defendant was the book in which the partnership accounts were kept, when it is in evidence, undisputed, that that book was produced and used at the settlement at Mr. Van Fleet's office as the book of the partnership accounts, and no suggestion or intimation was made by the complainant that it was not what it was represented to be.

The bill will be dismissed, with costs.